AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One lavender Samsung cell phone inside a clear case with a ring holder and with IMEI 359573/49/044912/4 | Case No. 23 8471 MB<br>(Filed Under Seal) |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before __9/26/23__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for __30__ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __9/12/23  2:49pm__   _____
                                            *Judge's signature*

City and state: __Phoenix, Arizona__   <u>Honorable John Z. Boyle, U.S. Magistrate Judge</u>
                                       *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is one lavender Samsung cellular phone inside of a clear case with a ring holder with IMEI 359573/49/044912/4 (stored under barcode: E7462771) (the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at Federal Bureau of Investigation Phoenix Division.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information between July 29, 2023 and the present found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
One lavender Samsung cell phone inside of a clear case with a ring holder and with IMEI 359573/49/044912/4.

Case No. 23-8471MB

(Filed Under Seal)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Use of a Communication Facility to Commit a Federal Drug Felony |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent Emma V. Avilez**

☒ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Emma V. Avilez* Digitally signed by Emma V. Avilez Date: 2023.09.12 08:49:53 -07'00'

Reviewed by AUSA BRUCE R. VAN BAREN

BRUCE VAN BAREN  Digitally signed by BRUCE VAN BAREN Date: 2023.09.12 11:05:44 -07'00'

Sworn telephonically and signed electronically.

Date:  9-12-23  2:49p

City and state: Phoenix, Arizona

*Applicant's Signature*

Emma V. Avilez, Federal Bureau of Investigation
*Printed name and title*

*[Judge's signature]*

*Judge's signature*

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is one lavender Samsung cellular phone inside of a clear case with a ring holder with IMEI 359573/49/044912/4 (stored under barcode: E7462771) (the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at Federal Bureau of Investigation Phoenix Division.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information between July 29, 2023 and the present found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Emma V. Avilez, being first duly sworn, hereby deposes and states:

## I. INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone described more particularly in Attachment A (the "SUBJECT CELLULAR TELEPHONE"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since December 2023. My duties currently include investigating federal crimes.

3. Prior to becoming a Special Agent, your Affiant attended the FBI Academy in Quantico, Virginia. While at the FBI Academy, your Affiant received formal training in investigative techniques; arrests, searches, and seizures; and criminal activity.

4. Your affiant has assisted the Violent Street Gang Task Force ("VSGTF") in Phoenix, Arizona. The VSGTF is dedicated to conducting large-scale criminal investigations targeting gang enterprises, gang members, and their associates. During my time assisting the VSGTF, your Affiant has participated in the execution of search and seizure warrants authorizing the search of locations and vehicles used by gang members to further illicit gang activity. Materials searched for and recovered in these locations have included: controlled substances, packaging materials, scales, weapons, cellular telephones, and proceeds derived from the distribution of controlled substances.

5. During these investigations, your Affiant has also participated in assisting with interviewing witnesses, subjects, and cooperating sources regarding gang activity, organization, and status. Your Affiant has participated in surveillance, observing and

recording movements of gang members and associates as they conduct illegal activity, including monitoring drug transactions, firearms transactions, and money transfers.

6. Based on Your Affiant's training and experience, your Affiant knows that drug traffickers, gang members, and their associates commonly use cellular telephones and other communication devices to communicate with their co-conspirators and facilitate the commission of controlled substance offenses. These devices contain electronically stored data, including, but not limited to, contact names and numbers of narcotics associates, call details including call and text message history, email messages, text messages, images related to the traffickers, their associates and their drug-related activities, and ledgers or other records of drug trafficking and money laundering activities, all of which can be used to identify and locate narcotics associates, identify organizational methods of operation, and corroborate other evidence learned during the course of an investigation.

7. The statements contained in this Affidavit are based on information provided to your Affiant by other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by confidential sources and/or undercover officers; information learned through seizures of contraband; and analysis of telephone toll records. Your Affiant also relies on my own experience, training, and background in evaluating this information.

8. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II. BASIS FOR PROBABLE CAUSE

9. On September 7, 2023, shortly after 11:15 a.m., investigators stopped a blue 2006 Acura TL (the "Acura") for multiple traffic violations. Investigators were following the Acura and watched it leave an AutoZone parking lot, making an improper right turn

2

(west bound) onto Bethany Home Road, in Phoenix, Arizona, followed by an immediate illegal U-turn to enter a shopping center immediately south of the AutoZone parking lot. This erratic driving continued through the parking lot of the shopping center, which the Acura then exited going south on 43rd Avenue. The Acura began speeding south on 43rd Avenue until making an improper right turn west bound on Camelback Drive. Once on Camelback Drive, the Acura began driving slower and obeying traffic laws. Once the Acura entered a nearby neighborhood, investigators initiated a traffic stop on the Acura.

10. As investigators approached the Acura, they saw that the driver and sole occupant (who was later identified as Felipe Guadalupe Montoya Chavez ("Chavez")) appeared to be very nervous. Investigators also saw a grocery bag in the rear passenger seat of the Acura that contained blue pills and a white crystalline substance in plain sight.

11. Investigators asked Chavez, who continued to appear nervous, to step out of the vehicle. Investigators asked for consent to search the Acura. Chavez responded, "What's the difference? Go ahead and look." Before they searched the Acura, investigators asked Chavez whether there were any firearms or dangerous items in the vehicle. Chavez responded, "No, but I picked up something and I don't know what it is. I was told to pick it up and drop it off somewhere." Chavez was evasive and provided no more details.

12. During a search of the Acura, law enforcement found about 1,423.5 grams of a white, crystalline substance suspected to be methamphetamine and about 10,000 counterfeit oxycodone hydrochloride 30 mg pills, a Schedule II controlled substance, suspected to contain fentanyl ("Counterfeit M30s"), which weighed about 1,146.7 grams. These drugs were all in a grocery bag in the back seat of the Acura in plain sight.

13. Investigators identified Chavez based on his Mexican identification card. Chavez is a citizen of Mexico and does not have legal status to be in the United States. Chavez was last deported on or about July 29, 2023. When asked about his immigration

status, Chavez stated that he entered the United States about 20 days ago. He further stated he had not fully paid for the entry and owed money for crossing into the United States.

14. Investigators later learned that Chavez had a warrant out of the State of Arizona, City of Surprise, which was issued on September 26, 2018. Chavez also had a warrant out of the State of Arizona, City of Phoenix, for failure to appear related to an arrest in 2017 for Driving Under the Influence. Law enforcement officers of the Surprise Police Department took custody of Chavez and booked him into jail.

15. On September 8, 2023, law enforcement field tested the suspected methamphetamine seized, and it field tested positive for methamphetamine.

16. Based on my training and experience, 1,146.7 grams—about 10,000 dosage units—of Counterfeit M30s, and 1,423.5 grams—about three pounds—of suspected methamphetamine are consistent with distribution and not personal use.

17. In addition, investigators seized about $1,974 from Chavez's person. Having this amount of bulk cash on his person is also consistent with the distribution of drugs.

18. Based on my training and experience, your Affiant knows that persons who purchase or transport drugs frequently use cellular phones to maintain contact with their associates during travel and use cellular phones to contact persons to determine time and location of where to pick up and drop off the drugs. Based on my training and experience and knowledge of this investigation, including Chavez's statements that he was told to pick up and drop off the drugs that were found in the backseat of his car, your Affiant knows that Chavez likely used his cellular phone to communicate with others to know exactly when and where that he should pick up and then drop off the drugs found in his possession.

19. Based on the facts set forth in this Affidavit, your Affiant submits there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances), 21 U.S.C. § 843(b) (Use of Communication Facility to Facilitate the Commission of a Controlled Substance Offense),

and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) have been committed, are being committed, and will be committed by the user of the Target Cellular Telephone. There is also probable cause to believe that the location information described herein will constitute evidence of these criminal violations, will lead to the identification of individuals who are engaged in the commission of these offenses, and will assist law enforcement in locating the user of the Target Cellular Telephone

20. The SUBJECT CELLULAR TELEPHONE is currently in the lawful possession of the FBI. The FBI seized the SUBJECT CELLULAR TELEPHONE incident to Chavez's arrest and with his consent after he was stopped for traffic offenses. Therefore, while the FBI might already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

21. The SUBJECT CELLULAR TELEPHONE is currently in storage at FBI Phoenix in the Evidence Control Room. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the FBI.

### III. ITEMS TO BE SEIZED

22. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

23. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

   a. Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of

telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities. Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

b. Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities. Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONE.

c. Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Moreover, drug traffickers commonly take photographs of their firearms. Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT CELLULAR TELEPHONE.

24. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

25. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

26.  *Probable cause.*  Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

   a.  Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.  The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The cellular telephone is also likely to be a storage medium for evidence of crime.  From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

   b.  Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

   c.  Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little

7

or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      27.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

      a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

8

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

  c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

  d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

30. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of: 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

*Emma V. Avilez* Digitally signed by Emma V. Avilez
Date: 2023.09.12 08:50:26 -07'00'

Special Agent, Emma V. Avilez
Federal Bureau of Investigation

Subscribed electronically and sworn telephonically this 12th day of SEPT 2023.

HONORABLE John Z. Boyle
United States Magistrate Judge

11